# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| ERIKA WILLIAMS, JAMES TULLY, | : | |
| WALTER RICHARDSON, and MICHAEL | : | |
| FRANK, *et al.*, individually and on behalf | : | |
| of others similarly situated, | : | **No.: 14-cv-1981** |
| | : | |
| Plaintiffs, | : | **Honorable John J. Tharp, Jr.** |
| | : | |
| v. | : | **Jury Trial Requested** |
| | : | |
| WELLS FARGO ADVISORS, | : | |
| | : | |
| Defendant. | : | |

## <u>AMENDED SETTLEMENT AGREEMENT</u>

This Settlement Agreement (the "Agreement") is entered into by and between Plaintiffs Erika Williams, Walter Richardson, Michael Frank and James Tully and the Classes of individuals that they seek to represent for settlement purposes only (as hereinafter defined) and Defendant (as hereinafter defined).

## RECITALS

WHEREAS, Plaintiff Erika Williams filed a Class and Collective Action Complaint under the Fair Labor Standards Act ("FLSA") and Illinois wage and hour laws against Defendant on March 20, 2014, alleging claims on behalf of herself and others similarly situated (Dkt. No. 1);

WHEREAS, Plaintiff Erika Williams, through her counsel, and Defendant agreed to toll statutes of limitations for claims challenging the lawfulness of any agreement that would allow Wells Fargo to recover training costs, claims for unpaid minimum wages because of efforts to recover training costs, and claims for overtime wages for financial advisor trainees on behalf of a putative class of similarly situated trainee employees of Defendant while the parties engaged in settlement discussions;

WHEREAS, the Complaint was amended on June 6, 2017 adding additional Plaintiffs Walter Richardson, Michael Frank and James Tully and adding California, Florida and New York wage and hour class claims and claims (Dkt. No. 55);

WHEREAS, Defendant denies and continues to deny all of the allegations made by Plaintiffs in the Litigation (as hereinafter defined), and has denied and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in

the Litigation, or that any claims asserted by Plaintiffs may proceed on a class or collective action basis;

WHEREAS, without admitting or conceding any arguments, issues, liability, or damages whatsoever, or that any claims alleged in the Litigation may proceed on a class or collective action basis, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden and expense of continuing the Litigation;

WHEREAS, Class Counsel (as hereinafter defined) has conducted extensive investigation and discovery including, but not limited to, interviews of numerous putative class members affected by the alleged unlawful practices and review and analysis of policies, procedures, time records and voluminous data that included pay records and hours worked records;

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Defendant in the Litigation, and the impact of this Agreement on Plaintiffs and the California Class, the Illinois Class, the New York Class, the Florida Class and the FLSA Collective (as in hereinafter defined and collectively "The Settlement Classes"); and

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable to the Settlement Classes, and that would not occur for several years, or at all, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Settlement Classes.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1. DEFINITIONS

The defined terms set forth herein shall have the meanings ascribed to them below.

**1.1** **Agreement**.  "Agreement" shall mean this Settlement Agreement, and all exhibits.

**1.2** **Applicable Workweeks**.  "Applicable Workweeks" shall mean any week worked by a Claimant as an FA Trainee during the Covered Period for any class or collective of which that Claimant is a member and any contiguous week worked by a Claimant as an FA Trainee thereafter, as reflected on Defendant's internal records.

A FA Trainee shall be entitled to credit for only one Applicable Workweek for any particular calendar workweek.

A partial week worked for Defendant as an FA Trainee at the beginning or end of consecutive weeks shall not be credited as an Applicable Workweek, except for California Class Members.

For individuals who are both State Law Class Members and FLSA Collective Members, any Applicable Workweek which is attributable to the Covered Periods for both a State Law Class and FLSA Collective will be allocated to the individual's Individual Settlement Amount for the FLSA Collective and not to the Individual Settlement Amount for the State Law Class.

1.3     **California Class; California Class Members**.  "California Class" shall mean all persons employed by Defendant in its Private Client Group ("Private Client Group" or "PCG") as an FA Trainee at any California location during the Covered Period, except that any individual who timely submitted or submits a valid request for exclusion shall not be included in the California Class.  A member of the California Class is a "California Class Member."

1.4     **Claim Form**.  "Claim Form" shall mean the form provided to State Law Class Members and FLSA Collective Members to submit a training cost claim.  The Claim Form shall be in the form attached as **Exhibit B** to this Agreement, subject to modifications by the Court and/or the Special Master as set forth herein.

1.5     **Claim Form Period**.  "Claim Form Period" shall mean the period of time in between the Claim Administrator's mailing of the Notice of Settlement and Claim Form and the Claim Form Deadline.

1.6     **Claim Form Deadline**.  "Claim Form Deadline" shall mean the date that is forty-five (45) days after the Claims Administrator mails the Claim Forms pursuant to Section 2.4 of this Agreement.  If the Claims Administrator re-mails the Claim Form to any individual pursuant to Section 2.4 of this Agreement because the first mailing was returned as undeliverable, the Claim Form Deadline for such individuals shall be the earlier of (a) forty-five (45) days after the re-mailing, or (b) ninety (90) days after the Claims Administrator's initial mailing, whichever is earlier.  If the Claim Form Deadline falls on a Sunday or holiday, the deadline to return Claim Forms will be the next business day that is not a Sunday or holiday.

1.7     **Claimant**.  "Claimant" shall mean (i) any Qualified State Law Class Member who does not submit an "Opt Out Statement" or (ii) any FLSA Collective Member.

1.8     **Claims Administrator**.  "Claims Administrator" shall mean the entity selected to provide notice to the Classes and administer payment of the settlement to Claimants.  Plaintiff has selected Epiq Class Action & Claims Solutions, LLC as the Claims Administrator, and Defendant has agreed to the selection.

1.9     **Class Counsel**.  "Class Counsel" shall mean Linda D. Friedman, Suzanne E. Bish and George S. Robot of Stowell & Friedman, Ltd. and J. Bryan Wood of The Wood Law Office, LLC.

1.10    **Court**.  "Court" shall mean the United States District Court for the Northern District of Illinois.

**1.11 Covered Period**. "Covered Periods" shall mean: (a) for California Class Members, the period from November 4, 2010 through December 31, 2016; (b) for Florida Class Members, the period from November 4, 2009 through December 31, 2016; (c) for Illinois Class Members, the period from January 1, 2009 through December 31, 2016; (d) for New York Class Members, the period from January 1, 2009 through December 31, 2016; and (e) for FLSA Collective Members, the period from November 4, 2011 through December 31, 2016.

**1.12 Defendant**. "Defendant" shall mean Wells Fargo Advisors, LLC.

**1.13 Defendant's Counsel**. "Defendant's Counsel" shall mean Kenneth J. Turnbull and Grace Speights of Morgan Lewis & Bockius LLP.

**1.14 Effective; Effective Date**. The "Effective Date" is the date on which this Agreement becomes effective, which shall mean fifteen (15) days following the last date the Final Order and Judgment entered by the Court finally approving this Agreement is appealable (30 days after the entry of Judgment), if no appeal is filed by any Claimant. If any such appeal is taken, then the Effective Date shall be fifteen (15) days after: (i) the date of final affirmance of an appeal of the Final Order and Judgment, or the expiration of the time for a petition for a writ of certiorari to review the Final Order and Judgment and, if certiorari be granted, the date of final affirmance of the Final Order and Judgment following review pursuant to that grant; or (ii) the date of final dismissal of any appeal from the Final Order and Judgment or the final dismissal of any proceeding on certiorari to review the Final Order and Judgment.

**1.15 Escrow Account**. "Escrow Account" shall mean the interest-bearing, FDIC insured account(s) created and controlled by the Claims Administrator.

**1.16 FA Trainee**. "FA Trainee" shall mean an individual who worked in a non-exempt position designated as a Trainee 1 or Trainee 2 in Defendant's Private Client Group New Advisor Training Program, as reflected in Defendant's internal records.

**1.17 Fairness Hearing**. "Fairness Hearing" shall mean the hearing on the Motion for Judgment and Final Approval of the Settlement.

**1.18 Final Individual Settlement Amount**. "Final Individual Settlement Amount" shall mean the final gross amount sent to any Claimant pursuant to this Agreement, not including the Training Cost Settlement Amount.

**1.19 Final Order and Judgment**. "Final Order and Judgment" shall mean the final Order entered by the Court after the Fairness Hearing approving the settlement and entering Judgment pursuant to this Agreement and in accordance with Fed. R. Civ. P. 58. Notwithstanding the foregoing, any proceeding or order, or any appeal or petition for a writ pertaining solely to the award of attorneys' fees and costs, Service Awards, and/or Settlement Administrative Expenses shall not in any way delay or preclude a judgment from becoming a Final Order and Judgment.

1.20 **Florida Class; Florida Class Members**. "Florida Class" shall mean all persons employed by Defendant as an FA Trainee at any Florida location during the Covered Period, except that any individual who timely submitted or submits an "Opt Out Statement" shall not be included in the Florida Class. A member of the Florida Class is a "Florida Class Member."

1.21 **FLSA Collective; FLSA Collective Member**. "FLSA Collective" shall mean all persons employed by Defendant as an FA Trainee at any time during the Covered Period. A member of the FLSA Collective is an "FLSA Collective Member."

1.22 **Illinois Class; Illinois Class Members**. "Illinois Class" shall mean all persons employed by Defendant as an FA Trainee at any Illinois location during the Covered Period, except that any individual who timely submitted or submits an "Opt Out Statement" shall not be included in the Illinois Class. A member of the Illinois Class is an "Illinois Class Member."

1.23 **Individual Settlement Amount**. "Individual Settlement Amount" shall mean the amount offered to each State Law Class Member and/or FLSA Collective Member pursuant to Section 3.6(C) of this Agreement.

1.24 **Litigation**. "Litigation" shall mean *Williams, et al. v. Wells Fargo Advisors*, No. 14-cv-1981, pending in the United States District Court for the Northern District of Illinois.

1.25 **Named Plaintiffs.** "Named Plaintiffs" and proposed Class Representatives in this Litigation are Erika Williams, Walter Richardson, Michael Frank and James Tully, and shall also include any and all of their representatives, heirs, administrators, executors, beneficiaries, agents, and assigns of such individuals, as applicable and without limitation.

1.26 **Net Settlement Fund**. "Net Settlement Fund" shall mean the remainder of the Settlement Fund after deductions for court-approved attorneys' fees and costs as described in Section 3.6(A), court-approved service payments to Named Plaintiffs as described in Section 3.3, the Reserve/Training Costs Fund as described in Section 3.5, and settlement administration fees and costs, as described in Section 2.1.

1.27 **New York Class; New York Class Members**. "New York Class" shall mean all persons employed by Defendant as an FA Trainee at any New York location during the Covered Period, except that any individual who timely submitted or submits an "Opt Out Statement" shall not be included in the New York Class. A member of the New York Class is a "New York Class Member."

1.28 **Notice or Notices.** "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class Action and Collective Action Lawsuit and Fairness Hearing, in the form attached as **Exhibit C**, as modified by the Court as set forth herein.

1.29 **Order Granting Preliminary Approval**. "Order Granting Preliminary Approval" shall mean the Order entered by the Court in the form attached as **Exhibit A**, as modified by

the Court, which, *inter alia*, provides preliminary approval, for settlement purposes only, of the terms and conditions of this Agreementand scheduling of the Fairness Hearing.

1.30 **Parties**. "Parties" shall refer to the Named Plaintiffs and Defendant.

1.31 **Plaintiffs**. "Plaintiffs" shall refer to the Named Plaintiffs in this action who shall serve as proposed Class Representatives.

1.32 **Qualified State Law Class Member**. "Qualified State Law Class Member" shall mean a State Law Class Member to whom a Notice and Claim Form are sent and who does not opt out in the manner prescribed in Section 2.5 of this Agreement.

1.33 **Settlement**. The "Settlement" shall mean the settlement embodied in this Agreement, and all exhibits.

1.34 **Settlement Administration Expenses**. "Settlement Administration Expenses" are those expenses incurred and charged by the Claims Administrator and/or Special Master in effectuating the Settlement.

1.35 **Settlement Amount**. "Settlement Amount" shall have the meaning defined in Section 3.1 below.

1.36 **Settlement Checks.** "Settlement Checks" means checks issued to Claimants for their share of the Net Settlement Fund calculated in accordance with this Agreement and/or checks issued to Training Cost Claimants.

1.37 **Settlement Cover Letter.** "Settlement Cover Letter" means the cover letter sent to Claimants with the Settlement Checks, and shall include all information required by this Agreement.

1.38 **Settlement Fund**. The "Settlement Fund" shall be the settlement fund created by the payment by Defendant of the Settlement Amount.

1.39 **State Law Class Member; State Law Class Members.** State Law Class Member(s) shall include the California State Law Class Members, Florida State Law Class Members, the Illinois State Law Class Members, and the New York State Law Class Members.

1.40 **Training Cost Claimant; Training Cost Claimants**. Training Cost Claimant(s) shall include any Claimants who submit a Claim Form for training costs to the Special Master and whose claim is accepted by the Special Master pursuant to Section 3.6(D) of this Agreement.

1.41 **Training Cost Settlement Amount**. "Training Cost Settlement Amount" shall mean any amount allocated by the Special Master to Class Members who timely file a Claim Form relating to training costs pursuant to Section 3.6(D) of this Agreement.

2. **APPROVAL AND CLASS NOTICE**

**2.1    Retention of Claims Administrator and Special Master**.

(A)    Plaintiffs have selected the Claims Administrator and Defendant has agreed to the selection.  The Claims Administrator shall be responsible for the claims administration process and distributions to Claimants as provided herein, as well as for making any mailings and performing other services as required under this Agreement.

(B)    Plaintiffs have selected Lynn P. Cohn, Center on Negotiation and Mediation, Northwestern University School of Law as a Special Master and Defendant has agreed to the selection.  The Parties agree to seek appointment of the Special Master pursuant to Fed. R. Civ. P. 53.  The Special Master's role and authority shall be limited as set forth in this Agreement, but shall include the discretion to modify the Claim Form.

(C)    The Parties agree to cooperate with the Claims Administrator and Special Master and assist them in administering the Settlement.

(D)    All Settlement Administration Expenses incurred by the Claims Administrator and the Special Master shall come out of the Settlement Fund.  If the Settlement is not given final approval by the Court, the Parties shall bear Settlement Administration Expenses equally.

**2.2    Preliminary Class Approval by the Court**.

(A)    Plaintiffs will submit to the Court a Motion for an Order Preliminarily Approving the Class and Collective Action Settlement and Certifying the State Law Classes For Settlement Purposes Only ("Preliminary Approval Motion").

(B)    In connection with the Preliminary Approval Motion, Plaintiffs will submit to the Court, among other things, (a) the proposed Notice attached as Exhibit C; (b) a proposed Claim Form which is attached as Exhibit B (which shall be subject to modification by the Special Master); and (c) a proposed Order Granting Preliminary Approval of Class and Collective Action Settlement, which is attached as Exhibit A.

(C)    The Preliminary Approval Motion will request dates for the mailing of Notices, the submission of Claim Forms, Opt Out Submissions, objections, and a Fairness Hearing, and seek appointment of the Class Counsel and the Class Representatives.

(D)    Plaintiffs will consider all reasonable comments provided by Defendant to the Preliminary Approval Motion.  Defendant will not oppose the Preliminary Approval Motion provided that it is made consistent with this Agreement. Plaintiff and Defendant agree to incorporate changes to the proposed Notice and/or Claim Form as directed by the Court.

2.3     **Final Order and Judgment from the Court**.  Plaintiffs will seek to obtain from the Court, as a condition of settlement, a Final Order and Judgment and the Parties may mutually agree to a Proposed Final Order and Judgment prior to seeking the Court's final approval of the Settlement.  The Proposed Final Order and Judgment will, among other things, (a) enter Judgment in accordance with this Agreement, (b) provide final certification, for settlement purposes only, of the State Law Classes, (c) approve the Settlement as fair, adequate, reasonable, and binding on all Qualified State Law Class Members and all FLSA Collective Members who negotiate checks, (d) dismiss the Litigation in its entirety with prejudice, (e) enter an order permanently enjoining all Qualified State Law Class Members and FLSA Collective Members who negotiate checks from pursuing claims in any forum and/or seeking to reopen claims in any forum that have been released by this Agreement, (f) provide for the payment of the amounts the Court will decide which are being petitioned for as Attorneys' Fees and Costs pursuant to Section 3.2 and for Service Awards to the Class Representatives pursuant to Section 3.3, (g) approve of payment of the Settlement Administration Expenses pursuant to Section 2.1, and (h) incorporate the terms of this Agreement.  Plaintiffs will provide Defendant with a draft of the motion seeking the Final Order and Judgment and Proposed Final Order and Judgment seven (7) business days before its filing and agree to consider reasonable comments provided by Defendant.  Defendant will not oppose the motion for the Final Order and Judgment provided that it is made consistent with this Agreement.

2.4     **Notices of Settlement and Claim Form**

(A)     Within ten (10) calendar days following the date of the Order Granting Preliminary Approval, Defendant will provide the Claims Administrator on a confidential basis with a list, in electronic form, of the names, employee identification or production numbers, locations of weeks worked as an FA Trainee, last known addresses, Social Security Numbers, and the Applicable Workweeks worked by all State Law Class Members (the "State Law Notice List") and FLSA Collective Members (the "FLSA Notice List") and hours reported, and to the extent that individuals have both State Law and FLSA Applicable Workweeks, the two broken out.  Defendants simultaneously will provide Class Counsel on a confidential basis with identical lists but without addresses or Social Security Numbers.  The State Law Notice List and the FLSA Notice List shall, together, be referred to as the "Class Notice Lists."  Prior to the provision of the Class Notice Lists, the Claims Administrator shall execute an agreement, in a form acceptable to Defendant, not to use or disclose the information from the Class Notice Lists except as is necessary to perform the services required of the Claims Administrator under this Agreement.  Pursuant to this Agreement, Class Counsel agrees not to use or disclose the information from the Class Notice Lists except as necessary to perform their professional duties under this Agreement.  The Claims Administrator will agree not to disclose the Class Notice Lists and the data and information contained in the Class Notice Lists to anyone external to the Claims Administrator, and not to disclose the addresses or Social Security Numbers of Claimants to Class Counsel.

- 8

(B)     Prior to mailing the Notices and Claim Forms, the Claims Administrator will
        update the addresses for those on the Class Notice Lists using the National
        Change of Address database and other available resources deemed suitable by the
        Claims Administrator.

(C)     Within fifteen (15) calendar days after receiving the Class Notice Lists, or as soon
        thereafter as practicable, the Claims Administrator shall mail, via First Class
        United States mail, postage prepaid, Court-approved versions of the Notice in the
        form appended hereto as Exhibit C and the Claim Form in the form appended
        hereto as Exhibit B (modified as necessary according to the Special Master) to all
        State Law Class Members and all FLSA Collective Members using each State
        Law Class Member's or FLSA Collective Member's last known address as
        provided by Defendants and as updated by the Claims Administrator. The Claims
        Administrator shall give the parties four (4) business days' notice before the
        Notices and Claim Forms are sent out.

(D)     The Claims Administrator shall take all reasonable steps to obtain the correct
        address of any FLSA Collective Members or State Law Class Members for whom
        the Notice is returned by the post office as undeliverable and shall attempt re-
        mailings as described below. If any Notices or Claim Forms are returned as
        undeliverable, the Claims Administrator shall forward them to any forwarding
        addresses provided by the U.S. Postal Service.  If no such forwarding address is
        provided, the Claims Administrator shall perform skip traces using the State Law
        Class Member or FLSA Collective Member's social security number to attempt to
        obtain the most recent addresses for these State Law Class Members and/or FLSA
        Collective Members.  The Claims Administrator shall, within ten (10) calendar
        days after the first mailing of Notices, notify Class Counsel and Defendant's
        Counsel of the precise date of the end of the Opt Out Period and Claim Form
        Period.  The Claims Administrator also shall notify Class Counsel and
        Defendant's Counsel by email of State Law Class Members or FLSA Collective
        Members to whom re-mailings are sent and when they are sent.

(E)     Any FLSA Collective Member and/or State Law Class Member who wishes to
        seek recovery for Defendant's attempts to enforce the training costs agreement
        (including costs incurred or repaid as a result) shall submit a Claim Form
        articulating the basis for such claim and recovery.  Each FLSA Collective
        Member and/or State Law Class Member must submit his/her completed and
        signed Claim Form to the Claims Administrator by mail or an electronic means
        established by the Claims Administrator no later than the Claim Form Deadline.
        The Claims Administrator shall notify Class Counsel and the Special Master of
        any untimely Claim Forms submitted.  The Special Master may consider Claim
        Forms submitted after the Claim Form Deadline as timely for good cause shown,
        which shall be determined in the discretion of the Special Master.

(F)     The Claims Administrator shall promptly notify State Law Class Members or
        FLSA Collective Members who submit deficient Claim Forms ("Deficient
        Claimant(s)") of the deficiency within two (2) business days of receipt.  Deficient

Claimants will have fifteen (15) days from the mailing of the notification to cure said deficiencies, or until the expiration of the Claim Form Deadline as defined in Section 1.6 above, whichever is later. The Claims Administrator shall notify Class Counsel, Defendant's Counsel and the Special Master of deficient Claim Forms by email at the same time they notify the Deficient Claimant(s).

(G)     Within ten (10) days following the filing of this Agreement with the Court, Defendants shall serve upon the appropriate state and federal officials a notice of the proposed Settlement in compliance with the requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715.

**2.5     State Law Class Member Opt Out.**

(A)     Anyone who is a State Law Class Member may request exclusion from the State Law claims being settled by "opting out" of the California, Florida, Illinois or New York Class. State Law Class Members who choose to opt out of the State Law claims being settled must submit a written, signed statement to the Claims Administrator stating that he or she is opting out of the Settlement ("Opt Out Statement"). To be valid, the Opt Out Statement must contain the name, address and telephone number of the Class Member and the words: "I elect to exclude myself from the State Law Class claims in *Williams, et al. v. Wells Fargo Advisors.*" For State Law Class members who are also FLSA Collective Action Members, it must also state "I understand that I am excluding myself only from the State Law Class claims and not from the FLSA Collective Action." To be effective, such Opt Out Statements can be submitted electronically or through the means established by the Claims Administrator but must be received by the Claims Administrator by a date certain to be specified on the Notice, which will be the same as the Claim Form Deadline.

(B)     The Court shall determine whether an Opt Out Statement was submitted in accordance with the terms of this Agreement. State Law Class Members submitting untimely or deficient Opt Outs may be bound by the Settlement and its State Law Class Member Release and considered Claimants for State Law settlement distribution purposes. If a State Law Class Member submits both a Claim Form and an Opt Out Statement, the Opt Out Statement will control and the State Law Class Member will not be considered a Claimant.

**2.6     Objections to Settlement.**

(A)     Any Qualified State Law Class Member who wishes to object to, or to appear at the Fairness Hearing to object to, any part of the proposed settlement must do so in writing.

(B)     To be considered, the written objection may be submitted via U.S. mail or electronically through the means established by the Claims Administrator but must be received by a date certain to be specified on the Notice, which will be the same as the Claim Form Deadline or such other date determined by the Court.

(C)     The written objection must include the reasons for the objection. The written objection must also include the name, job title, address, and telephone numbers for the State Law Class Member making the objection. The Claims Administrator will notate the date received and send copies of each objection to Class Counsel and Defendant's Counsel by email no later than three (3) days after receipt thereof. Class Counsel will file any and all objections with the Court with the Motion for Judgment and Final Approval. Anyone who fails to submit timely written objections in this manner shall be deemed to have waived any objections and shall be foreclosed from making any objection to the Settlement and from filing any appeal from any final approval order issued by the Court.

(D)     An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections. An objector who has submitted a timely written objection in accordance with Section 2.6 and a written intention to appear at the Fairness Hearing may do so in person or through counsel hired by the objector. An objector may withdraw his/her objections at any time. No objector may appear at the Fairness Hearing unless he/she has submitted a timely objection that complies with the procedures provided in Section 2.6. Any State Law Class Member who has submitted an Opt Out Statement may not submit objections to the Settlement.

(E)     The Parties may file with the Court written responses to any filed objections at or prior to the Fairness Hearing.

**2.7**     **Claims Administrator Reporting**. After issuing the Notices and Claim Forms, the Claims Administrator shall provide periodic reports to Class Counsel and Defendant's Counsel with respect to the numbers of individuals submitting deficient or untimely Claim Forms, Opt Out Statements, and objections. Within ten (10) calendar days of the close of the Claim Form Deadline, the Claims Administrator shall prepare and provide to Class Counsel and Defendant's Counsel a final list of all individuals who timely submitted a valid Opt Out. The Claims Administrator shall also prepare and provide a list of Class Members who submitted timely, valid Claim Forms, which were accepted in accordance with Section 3.4, together with copies of the applicable Claim Forms and shall provide such information and documents to Class Counsel. The Claims Administrator will update and supplement this information as necessary. As settlement checks are distributed, the Claims Administrator shall also provide periodic accountings of the Settlement Fund to Class Counsel and a list of those who cashed settlement checks to Defendant's Counsel.

**2.8**     **Motion for Final Order and Judgment**. No later than fourteen (14) calendar days before the Fairness Hearing, Plaintiffs will submit a Motion for Judgment and Final Approval. The Fairness Hearing shall be held at the Court's convenience.

**2.9**     **Entry of Judgment**. At the Fairness Hearing, the Parties will request that the Court, among other things, (a) certify the State Law Classes for purposes of settlement only, (b) enter Judgment in accordance with the terms of this Agreement, (c) approve the Settlement as fair, adequate, reasonable, and binding on all Qualified State Law Class

Members and FLSA Collective Members who negotiate checks, (d) dismiss the Litigation with prejudice, (e) enter an order permanently enjoining all Qualified State Law Class Members and FLSA Collective Members who negotiate checks from pursuing claims in any forum and/or seeking to reopen claims in any forum that have been released by this Agreement, including those in other pending cases and arbitrations, and (f) incorporate the terms of this Agreement.

2.10 **Right to Revoke/Retention of Funds**.  Defendant has the right to withdraw from the Settlement at any time prior to the entry of the Final Order and Judgment if:  (a) an agreed upon percentage (set forth in Appendix 1 filed with the Court under seal) of the State Law Class Members opt out of the Settlement; or (b) the Settlement is construed in such a fashion that Defendant is required to pay more than the Settlement Amount set forth in Section 3.1(A); or (c) the Court does not certify the Settlement Classes; or (d) the Court does not certify classes releasing the claims set forth in Section 3.8 below; or (e) the Court otherwise issues an order inconsistent with any of the terms of this Agreement except with respect to the language or format of Notices or Claim Forms to be provided. The parties agree that the percentage of State Law Class Members who opt out necessary to trigger Defendant's right to revoke the Agreement shall be confidential and filed under seal.

2.11 **Effect of Revocation or Failure to Grant Final Approval**.  In the event the Court fails to enter Judgment in accordance with this Agreement, or such Judgment does not become Final as defined herein, or the Agreement does not become Effective, or Defendant revokes the Settlement pursuant to Section 2.10:  (i) this Agreement shall have no force or effect, other than this Paragraph 2.11, the allocation of settlement administration expenses in Paragraph 2.1, and the non-admission provisions in Paragraph 3.10; (ii) neither this Agreement, nor any other related papers or orders, nor the negotiations leading to the Settlement, shall be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; (iii) the preliminary and conditional certification of the Classes shall become null and void, and the fact of certification shall not be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; (iv) none of the Parties will be deemed to have waived any claims, objections, defenses, or arguments with respect to the issue of class or collective action certification or the merits of Plaintiff's claims or any other issue; and (v) the Litigation will proceed as if no settlement had been attempted, unless the Parties jointly agree to attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.  In the event this Agreement does not become Final and the Notices already have been sent, the parties shall provide notice that the Settlement did not receive final approval and that, as a result, no payments will be made under it.  Such notice shall be mailed by the Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Claims Administrator in mailing the Notices.  The costs of such mailing shall be split equally between Plaintiff and Defendant.

- 12

3.     **SETTLEMENT TERMS**

3.1    **Settlement Payment**.

(A)    Defendant agrees to pay $3,500,000.00 (the "Settlement Amount"), which shall
       resolve and satisfy all monetary obligations under this Agreement, including all
       Plaintiffs' attorneys' fees and litigation costs, Settlement Administration
       Expenses, payments to Claimants, all payroll taxes and all other applicable taxes
       (with the sole exception and exclusion of the employer's share of payroll taxes as
       described in Section 3.7), interest, and Service Awards.  Except for the
       employer's share of payroll taxes as described in Section 3.7(F), Defendant shall
       not pay more than the Settlement Amount.

(B)    When and if the Court enters the Final Order and Judgment, and the Effective
       Date as defined above has passed, Defendant shall deposit into the Escrow
       Account the Settlement Amount no later than twenty (20) calendar days after the
       Effective Date.

(C)    Settlement payments will be calculated for each Qualified State Law Class
       Member who does not Opt Out in the manner prescribed in Section 3.6 and FLSA
       Collective Member.  For each Claimant, the Claims Administrator will calculate
       the final amounts due to each Claimant as the Final Individual Settlement Amount
       and issue checks payable to said Claimants.

(D)    Within twenty-five (25) calendar days following Defendant's deposit into the
       Escrow Account, the Claims Administrator will distribute the money in the
       Escrow Account by making the following payments:

       (1)    Paying Class Counsel Court-approved attorneys' fees as described in
              Section 3.2.

       (2)    Paying the Claims Administrator and Special Master as described in
              Section 2.1.

       (3)    Reimbursing Class Counsel for all costs and expenses approved by the
              Court as described in Section 3.2.

       (4)    Paying the Service Awards in the amounts described in Section 3.3 to the
              extent approved by the Court.

       (5)    Reserving funds to be available for the Reserve/Training Costs Fund as
              described in Section 3.5.

       (6)    Paying Claimants their Final Individual Settlement Amounts as described
              in Section 3.6.

(E)    The Parties agree that the Escrow Account is intended to be a "Qualified
       Settlement Fund" under Section 468B of the Code and Treas. Reg. §1.468B-1, 26

- 13

CFR § 1.468B-1, et seq., and will be administered by the Claims Administrator as such. With respect to the Escrow Account, the Claims Administrator shall: (1) calculate, withhold, remit and report each Claimant's share of applicable payroll taxes (including, without limitation, federal, state and local income tax withholding, FICA, Medicare and any state or local employment taxes); (2) indemnify Defendants for any penalty arising out of any error or incorrect calculation and/or interest with respect to any late deposit of the same; (3) satisfy all federal, state and local income and other tax reporting, return and filing requirements with respect to the Escrow Account; and (4) satisfy out of the Escrow Account all (i) taxes (including any estimated taxes, interest or penalties) with respect to any interest or other income earned by the Escrow Account, and (ii) fees, expenses and costs incurred in connection with the opening and administration of the Escrow Account and the performance of its duties and functions as described in this Agreement. The taxes, fees, costs and expenses referenced in Section 3.1(E)(4) shall be treated as and included in the costs of administering the Escrow Account. The Parties and the Claims Administrator shall elect to treat the Settlement Fund as coming into existence as a Qualified Settlement Fund on the earliest date set forth in 26 CFR §1.468B-1(j)(2)(i), and that such election statement shall be attached to the appropriate returns as required by 26 CFR §1.468B-1(j)(2)(ii). The Parties agree to cooperate with the Claims Administrator and one another to the extent reasonably necessary to carry out the provisions of this Section 3.1(E). The Parties will require the Claims Administrator to indemnify and hold harmless the Parties for and against any claims or liabilities resulting from errors or omissions in its administration of the Escrow Account.

(F)     The payments to Plaintiffs and Claimants pursuant to Section 3.6 shall be considered compensation for disputed unpaid wages and, where applicable, disputed training cost reimbursement claims, penalties, and interest, as set forth in Section 3.7(B) during the period of employment with Defendant by the individual Plaintiff and/or Claimant as an FA Trainee only. To the extent any settlement payment results in any overpayment of unemployment benefits to any Plaintiff and/or Claimant, the amount of any such overpayment shall be the responsibility of the individual Plaintiff and/or Claimant, unless precluded by applicable law.

**3.2     Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)     Prior to the Fairness Hearing, Class Counsel shall petition the Court for reimbursement of reasonable litigation costs and expenses from the Settlement Fund. In addition, Class Counsel shall petition the Court for an award of attorneys' fees. Defendant will not oppose such applications provided the reasonable litigation costs and expenses and award of attorneys' fees do not exceed 33% of the Settlement Amount (a total of $1,166,550). Defendant shall have no additional liability for attorneys' fees and costs relating to the Litigation, the Settlement, or any claims released by this Settlement.

(B)     The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.  The effectiveness of this Settlement is not conditioned upon the Court awarding any specific amount as attorneys' fees and costs.  In the event Class Counsel appeals a determination of the Court regarding the application for attorneys' fees, such appeal shall not affect the Effective Date.  In such an event, Defendant shall deposit into the Escrow Account the full amount required under Section 3.1(B), but the Claims Administrator shall not make distributions required by Section 3.1(D) prior to the outcome of such appeal.  Any additional administration costs caused by such an appeal shall be borne by Class Counsel.

3.3     **Service Awards to Plaintiffs.**  Prior to the Fairness Hearing, Plaintiffs will petition the Court for a Service Award from the Settlement Fund for each Named Plaintiff. Defendant will not oppose such application provided the combined amounts of the Service Awards for each Named Plaintiff does not exceed $50,000.  The Service Awards shall be paid in addition to Plaintiffs' recovery from the formula allocation from the Net Settlement Fund, but all amounts for both the Service Awards and formula allocation will be paid out of the Settlement Fund.  The outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.  The effectiveness of this Settlement is not conditioned upon the Court awarding any specific amount as a Service Award.

3.4     **Untimely, Deficient, or Disputed Claims.**

(A)     The Claims Administrator shall promptly advise Class Counsel and Defendant's Counsel of any State Law Class Members or FLSA Collective Members who dispute their weeks worked and any individuals who come forward who were not identified as a State Class Member or FLSA Collective Member but assert that they should have been included on the Class Notice List(s).  Class Counsel and the Claims Administrator shall decide whether such individuals may participate in the Settlement or whether their weeks worked should be corrected (as applicable). If permitted to participate in the Settlement, such individuals shall be considered Claimants for all purposes under this Agreement and will not be permitted to opt out of the Settlement pursuant to Section 2.5.  To the extent possible, such decisions shall be made prior to the distribution of the Final Individual Settlement Amount.  The Claims Administrator and/or Defendant's counsel shall provide Class Counsel with all information necessary to make these decisions in good faith.  For purposes of any disputed claims, Defendant's internal records regarding weeks worked as an FA Trainee and location thereof are presumed to be accurate unless the disputing individual submits documentation demonstrating otherwise.

(B)     Requests by individuals to be identified as a State Law Class Member or FLSA Collective Member and disputes to weeks worked must be received by the Claims Administrator by the Claim Form Deadline or will be deemed to be waived. Any individual who is permitted to participate in the Settlement or any State Law Class Members or FLSA Collective Members whose weeks worked are corrected in accordance with this Section within fourteen (14) days prior to the distribution of the Final Individual Settlement Amount shall be paid from the Net Settlement Fund and the calculations of the Final Individual Settlement Amount for all other Claimants shall be adjusted as necessary in accordance with Section 3.6(B). Any individual who is permitted to participate in the Settlement or any State Law Class Members and/or FLSA Collective Members whose Claim Forms are accepted or whose weeks worked are corrected in accordance with this Section after the date that is fourteen (14) days prior to the distribution of the Final Individual Settlement Amount shall be paid from the Reserve/Training Costs Fund. In no event shall any actions taken in accordance with this Section result in Defendant being required to pay more than the Settlement Amount.

(C)     Individuals who contact the Claims Administrator who are neither an FLSA Collective Member, a State Law Class Member, nor an individual with a claim of being a State Law Class Member will be read a script by the Claims Administrator as agreed by and between the Parties which explains that, according to the Claims Administrator's information, they are not part of the Settlement. Their identity will not be disclosed by the Claims Administrator to either Party.

**3.5     Reserve/Training Costs Fund.**  Three Hundred Thousand ($300,000.00) of the Settlement Fund shall be held by the Claims Administrator as a Reserve/Training Costs Fund to be used in accordance with the terms set forth in this Agreement.

(A)     The Reserve/Training Cost Fund first shall be used by the Claims Administrator to make payments to individuals permitted to participate in the Settlement Agreement or State Law Class Members and/or FLSA Collective Members whose weeks worked are increased after the date that is fourteen (14) days prior to the distribution of the Final Individual Settlement Amount pursuant to Section 3.4.

(B)     Not less than 145 calendar days and not more than 160 calendar days after the Claims Administrator mails checks for Individual Settlement Amounts, the Reserve/Training Costs Fund shall be increased by the amount of any Unclaimed Checks for Individual Settlement Payments. The Claims Administrator shall promptly notify the Special Master of the amount of the Reserve/Training Costs Fund after determining that increased amount on a date not more than 160 calendar days after the Claims Administrator mails checks for Individual Settlement Amounts.

(C)     The Special Master shall allocate the Reserve/Training Costs Fund to FLSA Collective Member and/or State Class Members whose Claim Forms the Special Master accepts pursuant to terms described herein. Negotiated checks for

Training Cost Settlement Amounts shall be deducted from the Reserve/Training Costs Fund.

(D)     All allocations by the Special Master shall be made within 60 days of the calendar date that the Claims Administrator notifies the Special Master of the amount in the Reserve/Training Costs Fund and the Claims Administrator shall issue Training Cost Settlement Checks within 15 days after receiving the Special Master's allocation of Training Cost Settlement Amounts as set forth herein.

(E)     After the period for cashing checks for Training Cost Settlement Amounts expires, any money remaining from the Reserve/Training Costs Fund shall become part of a Cy Pres Fund to be donated to the following charity selected by Class Counsel:  The Impact Fund.

**3.6     Distribution to Claimants.**

(A)     The Net Settlement Fund shall be the amount of money remaining from the $3,500,000.00 Settlement Fund after deducting (a) attorneys' fees and costs approved by the Court, pursuant to Section 3.2; (b) Service Awards approved by the Court pursuant to Section 3.3; (c) amounts paid to the Claims Administrator and Special Master pursuant to Section 2.1; and (d) amounts set aside for the Reserve/Training Costs Fund pursuant to Section 3.5.

(B)     The Net Settlement Fund shall be allocated to Claimants as follows:  Each Claimant will receive one (1) point for each Applicable Workweek he or she was not paid at an overtime rate for any time worked as reflected on Defendants' internal records.  The Net Settlement Fund will be divided by the aggregate number of points accrued by all of the Claimants ("Initial Settlement Fund Point Value").  Each Claimant's total points will be multiplied by the Initial Settlement Fund Point Value to determine his or her Initial Individual Settlement Amount. Any Claimant whose initial Individual Settlement Amount does not exceed $100.00 will be allocated an Individual Settlement Amount of a minimum of $100.00 ("Minimum Individual Settlement Amount").

(C)     After determining Claimants who will be allocated the Minimum Individual Settlement Amount ("Minimum Amount Class Members"), the Settlement Fund Point Value shall be recalculated for all other Claimants as follows:  Each Claimant not allocated the Minimum Individual Settlement Amount will receive one (1) point for each Applicable Workweek he or she was not paid at an overtime rate for any time worked as reflected on Defendant's internal records. The Net Settlement Fund, less amounts allocated to Minimum Amount Class Members, will be divided by the aggregate number of points accrued by Claimants not allocated the Minimum Individual Settlement Amount ("Final Settlement Fund Point Value").  The total points for each Claimant not allocated the Minimum Individual Settlement Amount will be multiplied by the Final Settlement Fund Point Value to determine his or her Individual Settlement Amount.

(D)    Any FLSA Collective Member and/or Qualified State Law Class Member who submits a Claim Form or whose Claim Form is accepted by the Special Master is eligible for a Training Cost Settlement Amount from the Special Master. Training Cost Settlement Amounts shall be determined by the Special Master pursuant to terms set forth in this Agreement.

    (1)    Any Training Cost Claimant may, but need not, submit supporting documentation up to 25 pages. Such documentation, which may include a signed statement, declaration or affidavit not exceeding 3 pages, shall be submitted to the Claims Administrator with the Claim Form. The Claims Administrator shall forward all timely submitted Claim Forms and supporting documentation to the Special Master in conjunction with reporting the amount of the Reserve Fund pursuant to Section 3.5(B).

    (2)    The Special Master shall consider all Claim Forms and allocate the Reserve Fund amount as reported by the Claims Administrator pursuant to Section 3.5(B) to Training Cost Claimants. The Special Master shall make such allocations based upon the Special Master's discretionary application of the following criteria: (a) the amount of training costs the Claimant repaid to Defendant (if any); (b) the amount the Claimant paid that was reimbursed to Claimant by a subsequent employer (if any), including through any "upfront" money or promissory notes or loans Claimant received from a subsequent employer; (c) whether Defendant requested repayment of training costs stated an intention to initiate or initiated a legal action (arbitration or lawsuit) against the Claimant to recover training costs; (d) whether the Claimant chose to leave the securities industry because of Defendant's attempts to enforce the training costs agreement; (e) whether the Claimant paid any attorneys' fees or forum fees (e.g., FINRA costs) as a result of Defendant's training cost repayment agreement or attempts to recover training costs; (f) information a Claimant provides to the Special Master the Special Master deems relevant; and (g) documentation corroborating a Claimant's Training Costs Claim Form or supporting any of these criteria.

    (3)    The Special Master shall have discretion in determining what portion of the Reserve Fund (if any) will be awarded to each Training Cost Claimant. The amount of the Reserve Fund allocated by the Special Master to a Training Cost Claimant (if any) shall be that Training Cost Claimant's Training Cost Settlement Amount. The Special Master may exercise discretion not to make Training Cost Settlement Payments to each Training Cost Claimant (i.e., the Special Master may decide to allocate a Training Cost Claimant no money). The Special Master's determination of any allocation (or lack thereof) of a Training Cost Settlement Payment to any Training Cost Claimant shall be final and unreviewable.

    (4)    The Special Master shall make efforts to allocate the entirety of the amount of the Reserve Fund reported by the Claims Administrator

- 18 -

pursuant to Section 3.5(B). In no event shall the combined Training Cost Settlement Amounts allocated by the Special Master exceed the amount of the Reserve Fund reported by the Claims Administrator pursuant to Section 3.5(B).

(5)     The Special Master shall notify the Claims Administrator of the identity of recipients and the Training Cost Settlement Amount for each recipient. The Claims Administrator shall verify that the combined Training Cost Settlement Amounts do not exceed the amount of the Reserve Fund reported by the Claims Administrator pursuant to Section 3.5(B).

(E)     A Claimant's Final Individual Settlement Amount shall be their Individual Settlement Amount subject to any adjustments under Section 3.4(B). The Claims Administrator shall mail each Claimant a check for his or her Final Individual Settlement Amount. The Claims Administrator shall mail each Training Cost Claimant who receives an allocation from the Special Master a check for his or her Training Cost Settlement Amount. Checks to Claimants for Final Individual Settlement Amounts and/or Training Cost Settlement Amounts shall prominently and boldly display the date by which they must be negotiated.

(F)     Defendant and the Claims Administrator shall exchange such information as is necessary and reasonably available for the Claims Administrator and Defendant to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.7.

(G)     Each Claimant will have one hundred and twenty (120) calendar days after his or her check date to redeem his or her settlement payments for his or her Final Individual Settlement Amounts. If Claimants do not redeem their Final Individual Settlement Amount settlement payment checks within the 120-day period, their settlement checks (the "Unclaimed Checks") will be void. Training Cost Claimants who receive an allocation from the Special Master shall have one hundred and twenty (120) calendar days after his or her check date to redeem their settlement payments for their Training Cost Settlement Amounts. If Claimants do not redeem their Training Cost Settlement Amount checks within the 120-day period, their checks (the "Unclaimed Training Cost Settlement Checks") will be void. In such event, the amounts associated with the Unclaimed Training Cost Settlement Checks shall be made part of the Cy Pres Fund and/or used to pay any unpaid Settlement Administration Expenses. Qualified State Law Class Members who do not redeem their Settlement Checks shall remain bound by this Settlement and the Releases in Section 3.8. This Agreement and the associated Final Order and Judgment do not and will not create any unpaid residue or unpaid residual with respect to any Unclaimed Checks or Unclaimed Training Cost Settlement Checks, and no distribution of such shall be required. The provisions of any unclaimed property statute or law do not apply to this action or this Agreement.

(H)     All payments to Claimants made pursuant to this Agreement shall be deemed to be paid to such Claimants solely in the year in which such payments actually are

- 19

received by the Claimants.  It is expressly understood and agreed that any amount paid to any Claimant shall not create any credit or otherwise affect the calculation of benefits provided under any pension, retirement, retirement savings, excess or supplemental retirement or retirement savings, any deferred compensation, bonus, equity, incentive, severance, displacement, supplemental unemployment, health, life, or disability plan, or any benefit, pension, or other compensation or benefit plan, policy, program, or arrangement (collectively, the "Wells Fargo Benefit Plans") provided by Defendant or any Company Releasee, and no payment made pursuant to this Settlement will be considered as "Compensation," "Earnings," "Salary," or any similar definition under any Wells Fargo Benefit Plans, and are not considered eligible compensation for Wells Fargo Benefit Plans, or for Wells Fargo's 401(k) Savings and Retirement Plans, or for any other benefit purposes, or otherwise require any contribution or award under any Wells Fargo Benefit Plan, or otherwise modify benefits, contributions or coverage under any Wells Fargo Benefit Plan.

**3.7**    **Taxability of Settlement Payments.**

(A)    For tax purposes, Training Cost Settlement Amounts paid to Training Cost Claimants shall not be treated as wages.

(B)    For tax purposes, the payments to Plaintiffs and Claimants for Service Awards and/or Final Individual Settlement Amounts pursuant to Section 3.6 shall be allocated as follows:  unpaid wages (50% of each settlement payment), and non-wage damages, including liquidated damages, interest, penalties, etc. (50% of each settlement payment).  Plaintiffs and Claimants will be exclusively responsible for their own portion of payroll and income taxes on the 50% of each settlement payment that is unpaid wages, and such amounts will be withheld from settlement payments.  Plaintiffs and Claimants shall each be exclusively liable for any and all tax liability, if any, on their own Individual Settlement Amounts.

(C)    Payments treated as wages pursuant to Sections 3.7 (B) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2.  Defendant shall cooperate with the Claims Administrator to timely arrive at an amount equal to the Claimant's withholdings.  The employer's share of the FICA tax and any federal and state unemployment tax due that are traditionally borne by employers shall not be deducted from any portion of any Final Individual Settlement Amounts or Training Cost Settlement Amounts.

(D)    Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding.

(E)    As to the payments reported as non-wage income, the Plaintiffs and Claimants each agree to indemnify and hold harmless Defendant for any taxes, penalties,

- 20

interest or other amounts due or owing by that individual Plaintiff and Claimant on their own Final Individual Settlement Amounts and/or their own Training Cost Settlement Amounts. Other than as set forth above, Defendant will not make any deductions, withholdings, or additional payments, including without limitation, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, wage garnishments, or charity withholdings from the payment to each Claimant and entry of the Final Order and Judgment by the Court shall be deemed authority not to make such deductions, withholdings, or additional payments. Any amount paid to Claimants shall not create any credit or otherwise affect the calculation of any deferred compensation, benefit, pension, or other compensation or benefit plan provided by Defendant.

(F)     Defendant shall cooperate with the Claims Administrator to timely arrive at an amount equal to the employer's share of the FICA tax and any federal and state unemployment tax due that are traditionally borne by employers, with respect to the amounts treated as wages pursuant to Section 3.7. Defendant shall promptly pay such amounts to the Escrow Account. The Claims Administrator shall be responsible for making all reporting, deposits, and withholdings with respect to all amounts payable to Claimants required pursuant to any federal, state, or local tax law or regulation hereunder under the EIN of the Escrow Account or the Defendant, as required by applicable law.

(G)     Each individual Claimant will be solely responsible for all taxes, interest, penalties, or other amounts due with respect to any payment received pursuant to this Agreement (other than taxes specified in Section 3.7(C)). Plaintiffs, on behalf of the Class Members and the Claimants, acknowledge and agree that they have not relied upon any advice from Defendant as to the taxability of the payments received pursuant to this Agreement.

(H)     The Claims Administrator shall handle all tax reporting with respect to the payments made pursuant to this Agreement and shall report the payments in accordance with applicable law.

## 3.8     Releases and Programmatic Relief by Defendant

(A)     **Release of Claims by Qualified State Law Class Members and Individuals whose Claim Form is accepted as a State Law Class Member in accordance with Section 3.4.** Upon the entry of the Final Order and Approval, and except as to such rights or claims as may be created by this Agreement, each Qualified State Law Class Member, and any individual who comes forward who was not identified as a State Law Class Member but who is accepted as a State Law Class Member in accordance with Section 3.4, on his or her behalf, and on behalf of his or her respective current, former and future heirs, assigns, spouses, executors, administrators, agents, and attorneys, shall fully release and discharge Wells Fargo Advisors, and its present and former affiliates, divisions, subsidiaries, parents, predecessors, successors, any merged entity or merged entities, and/or its or their present and former officers, partners, directors, employees, agents,

- 21

attorneys, shareholders, joint ventures, joint venturers, partners, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable with any of them ("Company Releasees"), of and from any and all wage and hour claims under California, Florida, Illinois or New York, state and local law, respectively, including statutory claims, whether known or unknown, in law or in equity, for conduct during the period of time the Class Member was an FA Trainee or are related to attempts to collect training costs, including claims under any legal theory for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay final wages, failure to reimburse for business expenses, failure to furnish accurate wage statements or other notices, failure to keep accurate records, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties, claims under the Employee Retirement Income Security Act ("ERISA") that are related to or derivative of the claims released in this Section 3.8(A), claims under the California Private Attorney General Act ("PAGA"), other penalties, related tort and punitive and liquidated damages claims, and/or violations of any other California, Florida, Illinois, New York state or local statutory and common law.  Claims released by California Qualified State Law Class Members include, but are not limited to, claims under California's Fair Employment and Housing Act, California Business and Professions Code, California Equal Pay Law, California Compensation Law, and any applicable California Industrial Welfare Commission Wage Order, the California Constitution or any common law.

Except for the wage and hour claims described above, nothing in this Settlement Agreement is intended to waive other claims that may not be waived without judicial approval under applicable law or any claims (class or individual) asserted on behalf of any Qualified State Law Class Member in *Slaughter, et al. v. Wells Fargo Advisors LLC*, Case No. 13-cv-06368 (N.D. Ill.).

This Settlement is intended to include in its effect all wage and hour claims identified in this Section 3.8(A), including claims that each Qualified State Law Class Member does not know or suspect to exist in his or her favor against Defendant or Releasees at the time of the release.  The Qualified State Law Class Members shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they may otherwise have had relating to the claims identified in this Section 3.8(A). California Qualified State Law Class Members specifically acknowledge the provisions of California Civil Code SECTION 1542, which provides as follows: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE

- 22

DEBTOR, and that they expressly waive and relinquish all rights and benefits they may have under this section, as well as under any other statutes or common law principle of similar effect which provides any remedy of any kind.

To the extent that Qualified State Law Class Members have brought any other cases or arbitrations seeking relief for these released claims, the Qualified State Law Class Members will move to dismiss such cases/arbitrations with prejudice.

(B) **Release of Claims by FLSA Collective Members Who Negotiate Checks.**
Upon the entry of the Final Order and Approval, and except as to such rights or claims as may be created by this Agreement, each FLSA Collective Member who negotiates a check, on his or her behalf, and on behalf of his or her respective current, former and future heirs, assigns, spouses, executors, administrators, agents, and attorneys, shall fully release and discharge the Releasees, of and from any and all federal, state, and local wage and hour claims, including statutory claims, whether known or unknown, in law or in equity, including, but not limited to, any FLSA claims (including but not limited to claims under 29 U.S.C. §§ 206, 211(c) and 215(a), including liquidated damages), and any and all wage and hour claims under any state or local law for conduct during the period of time the Class Member was an FA Trainee or are related to attempts to collect training costs, including but not limited to any claims under any legal theory for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay final wages, failure to reimburse for business expenses, failure to furnish accurate wage statements or other notices, failure to keep accurate records, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties, claims under the Employee Retirement Income Security Act ("ERISA") that are related to or derivative of the claims released in this Section 3.8(B), claims under the California Private Attorney General Act ("PAGA"), other penalties, related tort and punitive and liquidated damages claims, and/or violations of any other California, Florida, Illinois, New York state or local statutory and common law; except that any FLSA Collective Member who is also a State Law Class Member and excludes him or herself from the settlement of the State Law Class claims, releases only those claims within the FLSA Covered Period and does not release any claims under state law which fall outside the FLSA Covered Period.

Except for the wage and hour claims described above, nothing in this Settlement Agreement is intended to waive other claims that may not be waived without judicial approval under applicable law or any claims (class or individual) asserted on behalf of any Qualified State Law Class Member in *Slaughter, et al. v. Wells Fargo Advisors LLC*, Case No. 13-cv-06368 (N.D. Ill.).

This Settlement is intended to include in its effect all wage and hour claims identified in this Section 3.8(B), including claims that each FLSA Collective Member does not know or suspect to exist in his or her favor against Defendants or Releases at the time of the release. The FLSA Collective Members shall be

deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they may otherwise have had relating to the claims identified in this Section 3.8(B). Any FLSA Collective Member who is also a California Qualified State Law Class Members specifically acknowledge the provisions of California Civil Code SECTION 1542, which provides as follows: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR, and that he or she expressly waives and relinquishes all rights and benefits he or she may have under this section, as well as under any other statutes or common law principle of similar effect which provides any remedy of any kind.

To the extent that FLSA Collective Members have brought any other cases or arbitrations seeking relief for these released claims, the FLSA Collective Members will move to dismiss such cases/arbitrations with prejudice if he or she cashes his or her check for his or her Final Individual Settlement Amount.

All Settlement Checks issued to FLSA Collective Members shall contain on the back of the check, the following limited endorsement:

**FINAL RELEASE OF CLAIMS:**

By endorsing this check, I agree to be bound by the Settlement Agreement negotiated by Class Counsel in *Williams, et al. v. Wells Fargo Advisors*, No. 14-cv-1981 (N.D Ill.), and irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge the Released Claims as defined in the Settlement Agreement and Cover Letter I received with this check.

_____
Signature

(C)     Any Settlement Check that is negotiated shall signify the consent of such Claimant to release the Released Claims as a matter of law, regardless of whether the check is signed or the language set forth in Section 3.8(B) has been crossed out, excised, deleted, or amended.

(D)     **General Release of Claims by Plaintiffs.** In addition, to receive any Service Award, the Plaintiffs generally release and discharge Defendant and the Releasees from any and all claims, actions, causes of action, lawsuits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, agreements, promises, claims, charges, complaints and demands whatsoever, whether in law or equity, known or unknown, which the Plaintiffs and their heirs, executors, administrators, successors, and assigns, ever had, may now have, or hereafter later determine that they have or had upon, or by reason of, any cause or thing whatsoever, including,

- 24

but not limited to relating to his employment or termination of employment, including, but not limited to, claims arising under the Age Discrimination in Employment Act ("ADEA"), Americans With Disabilities Act, the National Labor Relations Act, the Fair Labor Standards Act, the Equal Pay Act, the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq., including but not limited to, breach of fiduciary duty and equitable claims to be brought under §1132(a)(3) ("ERISA"), the Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, the Vocational Rehabilitation Act of 1973, the Civil Rights Acts of 1866, 1871 and 1991, including Section 1981 of the Civil Rights Act, the Family and Medical Leave Act, the California Private Attorney General Act ("PAGA") and/or any other federal, state or local human rights, civil rights, wage-hour, pension or labor law, rule, statute, regulation, constitution or ordinance and/or public policy, contract or tort law, or any claim of retaliation under such laws, or any claim of breach of any contract (whether express, oral, written or implied from any source), or any claim of intentional or negligent infliction of emotional distress, tortious interference with contractual relations, wrongful or abusive or constructive discharge, defamation, prima facie tort, fraud, negligence, loss of consortium, malpractice, breach of duty of care, breach of fiduciary duty or any action similar thereto against Defendant or Releasees, including any claim for attorneys' fees, expenses or costs based upon any conduct from the beginning of the world up to and including the date that the Plaintiff executes the General Release; provided, however, that Plaintiff does not waive any right to file an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), subject to the condition that he or she agrees not to seek, or in any way obtain or accept, any monetary award, recovery or settlement therefrom; and further provided, however, that Plaintiffs do not release any claim for breach of the terms of the Agreement.

Except for the wage and hour claims described above, nothing in this Settlement Agreement is intended to waive other claims that may not be waived without judicial approval under applicable law or any claims (class or individual) asserted on behalf of any Qualified State Law Class Member in *Slaughter, et al. v. Wells Fargo Advisors LLC*, Case No. 13-cv-06368 (N.D. Ill.).

This Settlement is intended to include in its effect all claims identified in this Section 3.8(D), including claims that Plaintiffs do not know or suspect to exist in their favor against Defendant or Releasees at the time of the release. Plaintiffs shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they may otherwise have had relating to the claims identified in this Section 3.8(D).

If Plaintiffs are age 40 or over at the time they are presented with this Agreement, they shall have twenty-one (21) calendar days to consider the Agreement, and seven (7) days to revoke their entitlement to an Service Award and the general release of claims in this Section 3.8(D) following their execution of the Agreement, and such provisions shall not be effective or enforceable until the

expiration of this seven-day revocation period. Any revocation by Plaintiffs shall pertain solely to the payment of the Service Award and the general release set forth in this Section 3.8(D). Upon such revocation, Plaintiff shall not be paid any Service Award, and shall not release claims under this Section 3.8(D), but this Agreement shall otherwise remain valid and enforceable in all other respects, and Plaintiff shall continue to be considered a Claimant for purposes of participating in the Settlement and the Release of Claims by FLSA Collective Members and Claimants. Further, Plaintiffs are hereby advised to consult with an attorney of his or her choosing before executing this Agreement, and represent that they have done so with Class Counsel.

(E)     The Parties agree to work together in good faith to identify any cases and arbitrations which involve claims released by Section 3.8 of this Agreement and to determine a procedure for staying and/or dismissing those cases and arbitrations in order to effectuate the terms of this Agreement.

(F)     Plaintiffs hereby agree that they are not entitled to employment or re-employment (as a full-time or part-time employee) or assignment or work (as a temporary worker, independent contractor or consultant) from Defendant pursuant to this Settlement Agreement.

(G)     Nothing in this Release restricts or prohibits anyone from (i) complying with a lawful subpoena or other legal process, or (ii) initiating communications directly with, responding to any inquiries from, providing testimony before, providing confidential information to, reporting possible violations of law or regulation to, or from filing a claim or assisting with an investigation directly with a self-regulatory authority or a government agency or entity, including the U.S. Equal Employment Opportunity Commission, the Department of Labor, the National Labor Relations Board, the Department of Justice, the Securities and Exchange Commission, the Congress, and any agency Inspector General (collectively, the "Regulators"), or from making other disclosures that are protected under the whistleblower provisions of state or federal law or regulation. However, to the maximum extent permitted by law, Plaintiffs are waiving their right to receive any individual monetary relief from the Company Releasees resulting from such claims or conduct, regardless of whether Plaintiffs or another party has filed them, and in the event Plaintiffs obtain such monetary relief the Company Releasees will be entitled to an offset for the payments made pursuant to this Agreement. This Agreement does not limit Plaintiffs' right to receive an award from any Regulator that provides awards for providing information relating to a potential violation of law. Please take notice that federal law provides criminal and civil immunity to federal and state claims for trade secret misappropriation to individuals who disclose a trade secret to their attorney, a court, or a government official in certain, confidential circumstances that are set forth at 18 U.S.C. §§ 1833(b)(1) and 1833(b)(2), related to the reporting or investigation of a suspected violation of the law, or in connection with a lawsuit for retaliation for reporting a suspected violation of the law.

(H) Plaintiffs further covenant that they will not participate in any other legal actions against Defendant relating to claims released by this Agreement, and will not opt-in, will withdraw any opt-in, and will opt out of those actions if they become aware of such actions.

(I) Qualified State Law Class Members will still be bound by the Settlement and the Release in Section 3.8(A) regardless of whether they negotiate settlement checks.

(J) The Settlement Checks will be mailed to all Claimants by the Claims Administrator. Claimants will also receive Settlement Cover Letters and FLSA Collective Members will receive Settlement Checks containing a limited endorsement on the back consistent with Section 3.8(B).

(K) **Programmatic Relief and Release by Defendant.** Upon the entry of the Final Order and Approval in this Litigation, Defendant will end the practice of seeking to obligate participants in its broker training program ("New Financial Advisors" or FA Trainees) for reimbursement of any cost of their training, one of the practices challenged in this Litigation, for a period of 4 years from entry of the Final Order of Approval in this Litigation. Upon the entry of the Final Order and Approval in this Litigation, except as to such rights or claims as may be created by this Agreement, Defendant, agrees to release and discharge any claims it currently has or may have, and end any collection efforts, to seek reimbursement of training costs from "New Financial Advisors" or FA Trainees, including pending claims. Upon the entry of the Final Order and Approval, all individuals currently or formerly employed by Defendant as New Financial Advisors or FA Trainees will be released from any current or future obligations to reimburse training costs, including any portion of an arbitration award or judgment that pertains to reimbursement of training costs.

(L) **Release of Fees and Costs for Settled Matters.** Upon the entry of the Final Order and Approval in this Litigation, Class Counsel and Plaintiffs, on behalf of the State Law Class Members, and each individual Qualified State Law Class Member and Claimant, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendant or Company Releasees for attorneys' fees or costs associated with Class Counsel's representation of Plaintiff, the State Law Classes, the Qualified State Law Class Members, the FLSA Collective Members, and the Claimants in this Litigation, the Settlement, or any claims being Released by this Agreement and related papers. Class Counsel further understand and agree that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of these individuals.

3.9 **No Assignment.** Class Counsel and Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**3.10** **Non-Admission.** Nothing relating to this Agreement, or any communications, papers, or orders related to the Settlement, shall be cited to as, construed to be, admissible as, or deemed an admission by Defendant or Releasees of any liability, culpability, negligence, or wrongdoing toward the Plaintiffs, the State Law Class Members, the FLSA Collective Members, the Claimants, or any other person, and Defendant and Releasees specifically disclaim any liability, culpability, negligence, or wrongdoing, or that class or collective action certification is appropriate in this or any other matter. Each of the Parties has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and contingencies. This Agreement, and any communications, papers, or orders related to the Settlement, may not be cited to, used, or admitted as evidence of liability or that class or collective action certification is appropriate. There has been no determination by any Court as to the merits of the claims asserted by Plaintiff against Defendant or as to whether a class or collective should be certified, other than for settlement purposes only. Furthermore, nothing in this Agreement shall be considered any form of waiver of any alternative dispute resolution agreements, provisions, or policies by Defendant or Releasees.

**3.11** **Disclosure.** The Parties' acknowledge Plaintiff's and Class Counsel's duty to communicate about the Settlement Agreement for purposes of obtaining Final Approval and/or informing Class Members and FLSA Collective Action Members about their rights. The Parties agree and acknowledge that nothing herein shall prevent Class Counsel from referring or citing to this lawsuit and the pleadings and other papers filed in obtaining approval of this Settlement in any court filings and proceedings in other cases for the purposes of demonstrating their experience and adequacy as class counsel.

**3.12** **Non-Interference With This Settlement.** Pending the Court's decision on final approval of the Settlement and entry of the Court's Final Order and Judgment, the Parties agree Plaintiffs, Defendant and Class Counsel will not engage in any of the following: (a) further litigation in this Action; (b) filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate on an individual or a class or collective action basis any action, claim or proceeding against Defendant in any forum in which any of the claims subject to the Settlement are asserted, or which in any way would prevent any such claims from being extinguished (including through settlement in another matter); or (c) seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.

**3.13** **No Responsive Pleading to Amended Complaint.** The Parties agree that Defendant shall not be required to respond to the Amended Complaint unless the Settlement should not be approved by the Court or should be revoked by Defendant, in which case the Parties will agree upon a deadline for Defendant to answer, move, or otherwise respond to the Amended Complaint and shall submit such proposed deadline to the Court for approval.

**3.14** **Miscellaneous**

(A)     **Cooperation Between the Parties; Further Acts.** The Parties shall cooperate fully with each other and shall use their reasonable best efforts to obtain the

Court's approval of this Agreement and all of its terms. Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

(B)     **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

(C)     **Binding Effect.**  This Agreement shall be binding upon the Parties and Class Counsel and, with respect to the Plaintiffs and the State Law Class Members and FLSA Collective Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

(D)     **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arm's length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

(E)     **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

(F)     **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Illinois, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

(G)     **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.  The Court shall not have jurisdiction to modify the terms of the Agreement or to increase Defendant's payment obligations hereunder.

(H)     **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this

- 29

Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

(I)    **When Agreement Becomes Effective; Counterparts.**  Except for provisions of this Agreement requiring any Party to act or seek Court action prior to Court approval, which provisions are intended to be binding on the parties upon mutual execution hereof, this Agreement shall become fully effective upon the Effective Date.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendant had signed the same instrument.  A complete set of executed counterparts shall be filed with the Court.

(J)    **Extensions of Time.**  If any deadlines related to this Settlement cannot be met, Class Counsel and counsel for Defendant shall meet and confer to reach agreement on any necessary revisions of the deadlines and timetables set forth in this Agreement.  In the event that the Parties fail to reach such agreement, any of the Parties may apply to the Court via a noticed motion for modification of the dates and deadlines in this Agreement.

(K)    **Facsimile/Electronic Signatures.**  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

(L)    **Third Party Beneficiaries**.  The Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto; but this Agreement is not designed to and does not create any third party beneficiaries other than third parties that are identified as Company Releasees in Section 3.8 of this Agreement.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

| CLASS COUNSEL: | |
|---|---|
| DATED: September 20, 2017 | STOWELL & FRIEDMAN, LTD.<br><br>_____s/Suzanne E. Bish_____<br>By:    On behalf of Plaintiffs and the Class<br><br>Linda D. Friedman<br>Suzanne E. Bish<br>George S. Robot<br>STOWELL & FRIEDMAN LTD<br>303 W. Madison<br>Suite 2600<br>Chicago, IL 60606<br>(312) 431-0888<br>lfriedman@sfltd.com<br>sbish@sfltd.com |

| DEFENDANT: | |
|---|---|
| DATED: September 20, 2017 | MORGAN, LEWIS & BOCKIUS LLP<br><br>_____s/Kenneth J. Turnbull_____<br>By:    On behalf of Defendant Wells Fargo Advisors<br><br>Kenneth J. Turnbull<br>MORGAN LEWIS & BOCKIUS LLP<br>101 Park Avenue<br>New York, NY 10178<br>(212) 309-6000<br>Kenneth.turnbull@morganlewis.com |