**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ERIKA WILLIAMS, JAMES TULLY, WALTER RICHARDSON, and MICHAEL FRANK, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br>　v.<br><br>WELLS FARGO ADVISORS, LLC,<br><br>　　　　　Defendant. | Case No. 1:14-cv-1981<br><br>Honorable John J. Tharp Jr. |

## PLAINTIFFS' MOTION FOR SERVICE AWARDS TO CLASS REPRESENTATIVES AND ATTORNEYS' FEES AND COSTS

Plaintiffs, by and through Class Counsel, without opposition and pursuant to Rule 23, respectfully move this Court to award Service Awards to Class Representatives and Attorneys' Fees and Costs pursuant to the Settlement Agreement.[1] In support of their motion, Plaintiffs state as follows:

1.　　　Through this motion, Class Counsel seek Service Awards for Class Representatives and their fees and costs incurred in obtaining outstanding relief for the Settlement Class in this matter. Working together, Class Counsel and the Class Representatives investigated Plaintiffs' class claims, enabling the parties to negotiate a settlement that eliminates the unlawful practice Plaintiffs challenged (for at least 4 years) and affords *every* Class Member the opportunity to obtain relief for their Fair Labor Standards Act ("FLSA") claims from a $3.5 million Settlement Fund. None of that Settlement Fund will revert to Defendant Wells Fargo Advisors, LLC ("Wells Fargo" or "Defendant").

---

[1] The parties hereafter refer to this document (Dkt. 96-1) as the "Settlement Agreement." Except as otherwise noted, capitalized terms have the meanings stated in the Settlement Agreement.

2.      The Settlement Agreement also provides that Class Members will be relieved of any obligation to pay training costs to Wells Fargo—a benefit to the Class that could be worth between $38 million and $76 million (or more)—and allows Class Members to seek additional damages for Wells Fargo's attempts to collect that disputed debt.

3.      Each Class Representative's efforts on behalf of the Class were critical to bringing about this result for the Class. Class Counsel continually relied on the Class Representatives and the information they provided in negotiating this outcome. Accordingly, Class Counsel request that each Class Representative receive a Service Award of $12,500.

4.      Class Counsel also request attorneys' fees of 25% of the $3.5 million Settlement Fund (i.e., $875,000) plus their reasonable costs incurred to prosecute the claims in this lawsuit—despite the substantially more valuable benefit conferred upon Class Members. This Court should approve Class Counsel's request for fees and costs, all of which are appropriate under applicable law and the Settlement Agreement.

## ARGUMENT

## I.      Service Awards are Appropriate for The Class Representatives' Efforts on Behalf of the Class.

5.      Pursuant to Section 3.3 of the Settlement Agreement, Class Counsel may seek Service Awards for each Named Plaintiff. Class Counsel seeks Service Awards for each Named Plaintiff of $12,500—a total of $50,000 (or less than 1.5% of the Settlement Fund).

6.      The Class Representatives achieved a settlement that will bring systemic change to Wells Fargo and the securities industry and provide monetary relief to all Class Members. As a result, it is appropriate to compensate them for the sacrifices they made and the personal risks they took to lead the Class. The Class Representatives were committed to changing Wells Fargo's policies and practices, as well as obtaining meaningful relief for the Class, despite the

risks to them personally. (Ex. C, Bish Dec., ¶¶ 75-77.) Service awards for these Class

Representatives are appropriate "in light of the benefit [the representatives] bestowed on [the]

class, the risks [they] faced in bringing the case and the time [they] spent pursuing it…" *Cook v.

Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

      7.    The Service Awards sought in this Motion are within the range of service awards

provided to class representatives in similar wage and hour cases, and far less than in some

employment cases. *See, e.g.*, *Briggs v. PNC Fin. Servs. Group*, No. 1:15-cv-10447, 2016 U.S.

Dist. LEXIS 165560, at *5–*9 (N.D. Ill. Nov. 29, 2016) (St. Eve, J.) (approving service awards

of $12,500 to each of two plaintiffs in a $6 million FLSA class settlement); *Koszyk v. Country

Fin.*, No. 1:16-cv-3571, 2016 U.S. Dist. LEXIS 126893, at *7 (N.D. Ill. Sep. 16, 2016) (Norgle,

J.) (approving service awards of $10,000 to each of seven plaintiffs in a $2.825 million FLSA

class settlement); *Blum v. Merrill Lynch & Co., Inc.*, No. 1:15-cv-01636-GBD-JCF, Dkt. 135,

142 at ¶5 (S.D. N.Y. May 6, 2016) (approving ten named-plaintiffs' service awards of $10,000

each); *McReynolds v. Merrill Lynch,* No. 05-cv-6583, Dkt. 616 at 5 (N.D. Ill. Dec. 6, 2013)

(Gettleman, J.) (16 class representatives awarded service awards of $250,000 each in

discrimination suit).

      8.    All of the relevant factors support the service awards requested in this case. The

Class Representatives devoted significant time and energy and assumed personal, professional,

and financial risk in order to achieve relief for the Class. (Ex. C, ¶¶ 73-74) Each played a crucial

role in the litigation and settlement, actively participated in meetings and phone calls with Class

Counsel and contributed to Class Counsel's investigation and the negotiations of the Settlement

Agreement. Even though only Plaintiff Williams attended mediations in person, each Class

Representative spent substantial time consulting with Class Counsel, providing documents and

information, sharing their experiences, participating in decisions about negotiations and settlement and ultimately agreeing to the Settlement Agreement. (*Id.*) *See Sw. Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013), *aff'd as modified*, 799 F.3d 701 (7th Cir. 2015).

9. Moreover, in this digital age, these Class Representatives' names will forever be linked with this lawsuit. Employers and financially savvy investors routinely conduct online searches of people they encounter professionally, and a Google or PACER search may reveal the Class Representatives' role in this case. (Ex. C,¶ 75.) The Class Representatives face the risk that prospective employers will be reluctant to hire them and existing and potential clients will shy away from doing business with them because of their conduct on behalf of the Class. (Ex. C, ¶ 75.) A service award would partially compensate them for these risks.

10. Unlike other class members, the Class Representatives also have agreed to give Wells Fargo a general release of all claims (such as breach of contract, wrongful termination, and age and gender discrimination), not just the class claims described in the Notice this Court approved. Granting the requested Service Awards would partially compensate the Class Representatives for sacrificing their individual claims for the sake of the class. *See Curtis-Bauer v. Morgan Stanley & Co.*, No. 3:06-cv-3903, Dkt. 158 at 5–8, Dkt. 250 at 19 (N.D. Cal. Feb. 7 & Oct. 22, 2008) (approving additional compensation beyond service award for class representative's general release); *Tucker v. Walgreen Co.*, No. 05-cv-440, Dkt. 129 at 32–33, Dkt. 135 (S.D. Ill. Mar. 17 & 24, 2008) (approving awards totaling approximately 2.5% of common fund to class members and representatives who executed broader release).

11.     Accordingly, Class Counsel respectfully request that the Court approve service awards of $12,500 to each Class Representative, an aggregate total of $50,000—less than 1.5% of the Settlement Fund.

**II.     The Fees Requested by Class Counsel Are Fair and Reasonable.**

12.     The FLSA and state law claims Plaintiffs pursued permit recovery of attorneys' fees in order to provide incentives for attorneys to pursue claims enforcing the underlying substantive rights the laws protect.  *See, e.g.*, 29 U.S.C. § 216(b); *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009) (noting that "Congress wants even small violations of certain laws to be checked through private litigation").

13.     Pursuant to Section 3.2 of the Settlement Agreement, Class Counsel can request an award up to 33% of the $3.5 million Settlement Fund for attorneys' fees, as well as reimbursement of reasonable litigation costs and expenses.  Despite that, here Class Counsel only seek fees equal to 25% of the $3.5 million Settlement Fund, without regard to the total estimated value of the Settlement—which could be more than 10 times larger.  (Ex. B, Vekker Dec., ¶¶ 4-8.)

14.     In common fund cases like this one, Courts in this Circuit consider four factors in determining whether the fees are fair and reasonable: (1) the market value of the legal services; (2) the results obtained on behalf of the class; (3) the risk that the attorneys will receive no payment; and (4) the quantity and quality of the legal services provided to the class.  *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 957–58 (7th Cir. 2013); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*").  Each of these factors supports the 25% fee award Class Counsel request here.

**A. By Any Measure, Class Counsel Seek Fees Less Than the Market Value of Their Legal Services.**

15. The Seventh Circuit has repeatedly held an award of attorneys' fees from a class action settlement "should approximate the market rate that prevails between willing buyers and willing sellers of legal services." *Silverman*, 739 F.3d at 957; *accord In re Synthroid Mktg. Litig.*, 325 F.3d 974, 975 (7th Cir. 2003) ("*Synthroid II*"); *Synthroid I*, 264 F.3d at 718. Here, the fees Class Counsel seek—25% of the $3.5 million Settlement Fund—are less than the market value for their services whether measured by the fees Plaintiffs negotiated for Class Counsel's services, fees awarded in other wage and hour class litigation, or fees typically awarded in complex, class common fund cases.

16. <u>Class Counsel's Actual Market Rate</u>: "[E]stablishing a fee structure at the outset of a suit" is the ideal method of determining the market price for legal services. *Silverman*, 739 F.3d at 958; *see also Synthroid I*, 264 F.3d at 719. Accordingly, actual fee agreements signed by class members "*define* the market" rate in contingency, class litigation. *Synthroid I*, 264 F.3d at 720 (emphasis in original).

17. Here the Class Representatives are sophisticated financial advisors and each signed a fee agreement agreeing to pay Class Counsel a 33.33% contingency fee. (Ex. C, ¶ 82.) The Court need not "approximate the market rate" for Class Counsel's services here because, when the Class Representatives engaged counsel, they willingly agreed that the rate would be 33.33%. *See Silverman*, 739 F.3d at 959 (approving 27.5% fee award in $200 million settlement, where sophisticated institutional class members did not object).

18. Under *Synthroid I* and *II*, the agreement of these sophisticated parties to pay a 33.33% fee constitutes strong, definitive evidence of the market rate for Class Counsel's legal services. *Synthroid I*, 264 F.3d at 719–20; *Synthroid II*, 325 F.3d at 976; *see also City of*

*Greenville v. Syngenta Crop Protection, Inc.*, 904 F. Supp. 2d 902, 908–10 (S.D. Ill. 2012) (awarding 33.33% of $105 million fund to attorneys where sophisticated named plaintiffs agreed to one-third contingency). Despite the market rate, Class Counsel requests only 25% of the $3.5 million Settlement Fund (despite a Settlement Agreement valued far in excess of that amount).

19.    Awards In Wage & Hour Cases: In addition to being lower than the rate the Class Representatives negotiated, Class Counsel's requested fees are below the range of fees customarily awarded in wage and hour class and collective litigation. As one district court recently explained, a "request for one-third of the settlement in attorneys' fees is consistent with the market in the Northern District of Illinois" because "class and collective action employment lawyers routinely contract to receive one-third of any potential settlement as compensation for taking on the risk of funding a potential multi-year litigation without any assurance of recovery." *See, e.g.*, *Castillo v. Noodles & Co.*, No. 1:16-cv-03036, 2016 U.S. Dist. LEXIS 178977, *9–-11 (N.D. Ill. Dec. 23, 2016) (Wood, J.) (awarding attorneys' fees of $1 million from a $3 million FLSA settlement).

20.    Courts in wage and hour matters routinely award the market rate of one-third percentage of a common fund as fees. *See, e.g.*, *Briggs*, 2016 U.S. Dist. LEXIS 165560, at *10 (approving attorneys' fees of $2 million from a $6 million FLSA settlement, based in part on the fact that was what plaintiffs agreed to pay); *see also Koszyk*, 2016 U.S. Dist. LEXIS 126893, at *9–11 (N.D. Ill. Sep. 16, 2016) (awarding $941,666.67 as attorneys' fees from a $2.825 million FLSA settlement). Here, the 25% of the $3.5 million Settlement Fund that Class Counsel seek is less than the well-established market rate in wage and hour class and collective cases.

21.    Awards In Common Fund Cases: Likewise, Class Counsel's request is below the market rate for class litigation generally. "Courts throughout the Seventh Circuit routinely

consider the fee awards in other class actions and conclude that a one-third contingency fee is standard." *City of Greenville*, 904 F. Supp. 2d at 909 (citing cases); *see also Taubenfeld v. Aon Corp.*, 415 F.3d 598, 600 (7th Cir. 2005) (noting that "attorneys' fees from analogous class action settlements are indicative of a rational relationship between the record in this similar case and the fees awarded by the district court," and affirming 30% fee where securities class action was pending only 20 months before it settled); *Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (approving 38% fee in securities class settlement); *Mansfield v. Air Line Pilots Ass'n Int'l*, No. 06-cv-6869, Dkt. 373 ¶¶ 17–18 (N.D. Ill. Dec. 14, 2009) (awarding 35% of $44 million settlement fund for class of senior pilots alleging union discriminated in favor of junior pilots); *Smith v. Nike Retail Servs., Inc.*, No. 03-cv-9110, Dkt. 184, 187 (N.D. Ill. Oct. 1 & 2, 2007) (awarding 32.37% of $7.6 million settlement fund in race discrimination class action).

22.     Regardless of the measure of market rates the Court considers, Class Counsel's request for only 25% of the $3.5 million Settlement Fund is reasonable and below the market rate of their services and the services provided in this case. *See McDaniel v. Qwest Commc'ns Corp.*, No. 05-cv-1008, 2011 U.S. Dist. LEXIS 154591, at *12 (N.D. Ill. Aug. 29, 2011) (noting that "the 24.4% 'percentage' fee requested [] is well within—and indeed below—the market rate for high-risk, contingent-fee cases," and recognizing that "the real-world market range for contingent fee cases" is 33%-40%). That fact weighs heavily in favor of granting Class Counsel's request. *Id.*

**B.  The Results Obtained Favor Awarding the Fees Requested.**

23.     As discussed above and in materials in support of final approval, this Settlement will provide exceptional monetary and programmatic relief for Class Members. In addition to creating a Settlement Fund of $3.5 million that will provide monetary relief for all Class

Members, the Settlement ends the policy at the heart of this lawsuit and provides for affirmative releases of the disputed obligation to pay training costs—which Plaintiffs' independent expert estimates could be worth between $38 million and $76 million to the Class.  (Ex. B, ¶¶ 4-8.)

24.　　Numerous Class Members informed Class Counsel they supported the relief they will receive and only 6 of the 2,279 Class Members have requested not to participate in the Settlement.  (Ex. E, ¶ 11.)  These facts show not only the substantial benefit the litigation obtained for Class Members, but that Class Members appreciate that relief.  These facts, too, favor granting Class Counsel's request.

### C. The Risks Class Counsel Took Favor Awarding the Fees Requested.

25.　　Accepting cases like this on a contingency basis carry a high risk that the plaintiffs will recover nothing and their attorneys will never be reimbursed for their out-of-pocket costs, much less receive a fee for time invested in the case.  (Ex. C, ¶¶ 54, 82).  Those facts must be taken into account in determining reasonableness of a fee award.  *See McDaniel*, 2011 U.S. Dist. LEXIS 154591, at *11–12 (noting the importance of valuing risk undertaken by counsel in determining fee awards).  As the Seventh Circuit has explained, "[t]he greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman*, 739 F.3d at 958.

26.　　Here, Stowell & Friedman, Ltd. undertook significant risk in accepting and litigating this case for years, with no assurance it would ever be paid for these efforts.  (Ex. C, ¶¶ 54, 82-83.)  The Wood Law Office, LLC undertook some of those same risks when joining the litigation in early 2016.  (Ex. C, ¶ 82; Ex. H, Wood Dec., ¶ 9.)  Notably, the risk was real—as evidenced by the fact that Wells Fargo defeated certification in another wage and hour case in

California. *See, e.g., Tsyn et al. v. Wells Fargo Advisors, LLC*, Case 3:14-cv-02552-LB, 2016 U.S. Dist. LEXIS 18587 (N.D. Cal. Feb. 15, 2016)

27.     Moreover, the risk undertaken did not solely involve Class Counsel's time, because Class Counsel agreed to advance considerable costs necessary to retain nationally-known experts to analyze the claims, including the wage and working hours data in order to assess the practices at issue and potential damages. (Ex. C, ¶¶ 43, 67.) As discussed below, Stowell & Friedman, Ltd. paid for expert fees, travel costs for its attorneys, and mediation expenses, all without any assurance they would be able to recover those costs.  (Ex. G, Robot Dec. at ¶ 4.)  Accordingly, the risks undertaken by Counsel favor awarding the fees requested.

**D.     The Services Provided Favor Awarding the Fees Requested.**

28.     Like other factors the Seventh Circuit has held should be considered, the quantity and quality of Class Counsel's legal services justify the requested fee.  Class Counsel committed substantial time, effort, and resources to ensuring that this Settlement would yield meaningful programmatic and monetary relief to benefit the Class Members and to ensure the settlement addressed the actual experiences of and obstacles facing Class Members.  That meant securing considerable monetary relief to be distributed among all Class Members – none of which will revert back to Wells Fargo, unlike in many wage and hour class settlements – as well as policy changes and relief from the practices that caused the lawsuit.  No Class Member has objected to the fees sought for the prosecution and settlement of this action.

29.     In assessing the quantity of legal services, courts sometimes consider a lodestar crosscheck in common fund cases.  Based on their customary hourly rates, Stowell & Friedman, Ltd.'s lodestar through November 17, 2017, is over $901,262; the lodestar for The Wood Law Office, LLC is approximately $189,352.50.  (Ex. C, ¶ 85; Ex. H, at ¶ 12.)  Class Counsel's lodestar *exceed* the total fees requested.

30.     In calculating this loadstar, Class Counsel used their customary market hourly rates, some of which have been approved by judges in this and other districts. (Ex. C, ¶ 84; Ex. H, ¶¶ 13-18.)  Class Counsel's rates are reasonable as compared to hourly rates charged by professionals in comparable firms, as demonstrated through other judicial decisions.  *See, e.g.*, *Williams v. Neil's Food, Inc.*, No. 13-cv-2108, Dkt. 25 (N.D. Ill. Dec. 19, 2013) (awarding Werman Salas partner Doug Werman $650 per hour).[2]

31.     Despite already exceeding the total fees requested, Class Counsel's lodestar estimates do not include compensation for all services Class Counsel will continue to perform on behalf of the Settlement Class, assuming the Court grants final approval.  Without additional compensation, Class Counsel will continue working with the Claims Administrator and the Special Master to ensure the Settlement Fund is distributed in accordance with the Settlement Agreement, answer calls and questions from Class Members (particularly for Training Cost Claimants) regarding progress of settlement administration, and monitor Wells Fargo's compliance with the programmatic portion of the Settlement Agreement, among other responsibilities on behalf of the Class.  (Ex. C, ¶ 86.)

32.     Further, this is not a case in which Class Counsel seek a multiplier of their lodestar based on the quality of the results achieved, though the substantial benefits the Settlement Agreement affords Class Members would warrant application of a multiplier.  *See,*

---

[2]  The Seventh Circuit has explained that one measure of the reasonableness of an attorney's hourly rate is "evidence of fee awards the attorney has received in similar cases."  *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012).  Stowell & Friedman, Ltd.'s rates—which have not increased since 2013—are the same as the rates considered and approved in prior litigation in this District based on the opinion of former class action expert Professor John Coffee that the rates were reasonable in 2013.  (Ex. C, ¶ 84.) *See, e.g., Martignago v. Merrill Lynch*, No. 11-cv-3923, Dkt. 85, 89-1 (S.D.N.Y. Sept. 27 & Oct. 2, 2013) (reviewing Stowell & Friedman, Ltd.'s rates—the rates Professor Coffee reviewed—as a lodestar cross-check and finding them "entirely reasonable" in awarding 25% of the common fund in a wage and hour settlement). (Ex. C, ¶ 84.)

*e.g.*, *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) (noting that, in the Seventh Circuit, "[m]ultipliers anywhere between one and four" have been approved, based on "probability of success in this type of litigation at the outset of the case"); *Wilfong v. Rent-a-Center, Inc.*, No. 00-cv-680, 2002 U.S. Dist. LEXIS 28016, at \*28 (S.D. Ill. Oct. 4, 2002) (approving the requested multiplier of approximately 2 in employment discrimination case, and noting that a significantly higher award would still be appropriate); *see also* Alba Conte & Herbert Newberg, Newberg on Class Actions 578 (4th ed. 2002) ("Multiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied").[3]

33.     Like all other factors the Seventh Circuit asks courts to consider, the quality and quantity of the services Class Counsel have and will provide favor awarding the fees requested: 25% of the $3.5 million common fund, or $875,000.  But the hourly rates need not be examined in depth here, because in a common fund case like this one, the court evaluates the market rate. Here, the 33.33% contingency fee market rate, like the quantity of services provided (combined, over 1614 hours of attorney and paralegal time), favor approval of Class Counsel's request. *Silverman*, 739 F.3d at 957.  The services Class Counsel have and will provide more than justify the fees Class Counsel request.

## III.    The Costs Requested by Class Counsel Are Fair and Reasonable.

34.     Finally, Class Counsel request the Court reimburse them for the reasonable costs incurred in prosecuting this litigation. *Synthroid II*, 325 F.3d at 980.  Here, Class Counsel incurred $24,792.23 in costs to litigate this case, but seek recovery of only $23,613.23.

---

[3] *See, e.g.*, *Levitan v. McCoy*, No. 00-cv-5096, Dkt. 203 at 6 (N.D. Ill. Mar. 8, 2007) ("[A] lodestar multiplier of 2.9 . . . is a reasonable multiplier for risky, complex matters such as this [securities] one."); *In re Cenco Inc. Sec. Litig.*, 519 F. Supp. 322, 327 (approving multiplier of 4 for lead counsel in securities fraud class action).

(Ex. G, ¶ 4.) [4]

35.     All of these costs were reasonably incurred in connection with Class Counsel's efforts to investigate, file, litigate, mediate, and resolve claims on behalf of the Class or to obtain preliminary and final approval of the Settlement Award.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court enter the Order attached as Exhibit A granting service awards to Class Representatives and awarding Class Counsel their attorneys' fees and costs.

Respectfully submitted,

*/s/ Suzanne E. Bish*

Suzanne E. Bish
Linda D. Friedman
George S. Robot
STOWELL & FRIEDMAN, LTD.
303 W. Madison, Ste. 2600
Chicago, Illinois 60606
(312) 431-0888 (tel)
(312) 431-0228 (fax)

J. Bryan Wood (ARDC # 6270845)
THE WOOD LAW OFFICE, LLC
303 W. Madison, Ste. 2650
Chicago, Illinois 60606
(312) 554-8600 (tel)
(312) 577-0749 (fax)

---

[4] All costs were incurred by Stowell & Friedman, Ltd. (Ex. G, ¶¶ 4-10.)  At the Court's request, Class Counsel can provide additional information regarding specific fees and costs incurred.

## <u>CERTIFICATE OF SERVICE</u>

On November 21, 2017, the undersigned attorney served the attached *Plaintiffs' Motion For Service Awards To Class Representatives And Attorneys' Fees And Costs* on all counsel of record by filing it via the Court's electronic case filing system.

<u>/s/ Suzanne E. Bish</u>